## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**THERESA A. PALMER,**

      **Plaintiff,**              **CIVIL ACTION NO. 06-CV-13170-DT**

vs.

                                      **DISTRICT JUDGE ROBERT H. CLELAND**

**FORD MOTOR CO.,**                **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:** Defendant's Motion for Summary Judgment filed on November 1, 2007 (docket no. 22) should be **GRANTED**.

**II.**     **REPORT:**

    *A.*     *Procedural History, Facts, and Claims*

On August 22, 2005, Plaintiff filed her EEOC Charge of Discrimination in which she alleged that she was discharged from Ford Motor Company on April 29, 2005 for failing to respond to a 5-day quit letter. (Docket no. 22-32). She complained that she had been discriminated against because of her age of 48 years in violation of the Age Discrimination in Employment Act (ADEA). (*Id.*). On March 2, 2006, Plaintiff amended her Charge of Discrimination to include that she was discharged because of her sex and race in violation of Title VII of the Civil Rights Act of 1964 and because of her disability or her employer's perception that she has a disability in violation of the Americans with Disabilities Act (ADA). (*Id.*). The EEOC issued Plaintiff a Right to Sue letter on April 12, 2006. (Docket no. 1).

Plaintiff filed this action on July 12, 2006 alleging that she was wrongfully discharged by Defendant on April 29, 2005. (Docket no. 1). She raised violations of Title VII, the ADA, and the ADEA. (*Id.*). Plaintiff further alleged that she had suffered "discriminatory treatment, no promotions,

undisirable [sic] job placement as retaliation for many complaints of supervisors, and General Forman [sic], Mike Favor, became my direct supervisor for past year of employment to disipline [sic] and plan my Termination." (*Id.*).

Defendant filed this Motion for Summary Judgment on November 1, 2007. (Docket no. 22). Plaintiff filed a Response. (Docket no. 24). Defendant filed a Reply brief. (Docket no. 25). Pretrial matters have been referred to the undersigned for decision. (Docket no. 12). This Court dispenses with oral argument on this motion. Defendant's Motion for Summary Judgment is now ready for ruling.

   B.   *Standard of Review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

   C.   *Analysis*

The elements of a prima facie case for the claims that Plaintiff raises are similar. The burden-

shifting framework of *McDonnell Douglas* generally requires that Plaintiff show that she is a member of the protected class, that she was qualified for the position, that she suffered an adverse employment action, and that there is an inference of discrimination under the circumstances. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Once the Plaintiff establishes a prima facie case, the Defendant may then rebut the showing by offering a legitimate, nondiscriminatory rationale for, in this case, its termination of Plaintiff. *See Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). If the Defendant offers such a rationale, Plaintiff must then show that the reason proffered is pretextual. (*Id.*). Plaintiff may demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

There is no dispute in this action that since the day that Plaintiff was terminated, Defendant has advanced as the reason for her dismissal the fact that she failed to adequately respond to the 5-day quit letter. Plaintiff alleges that on April 29, 2005, she arrived at a company location to clear herself through the medical department but was stopped at the elevator by Tom Gunderson and Bruce Doom and told she was terminated because she did not respond to the 5-day quit letter. (Docket no. 24 at 4). The 5-day quit letter[1] is dated April 19, 2005. (Docket no. 22-29). It states that it has been five or more consecutive working days since Plaintiff last worked without sufficient reason or proper notification to management of the reason for her absence. The letter further states that if she does not, within five working days from the date of the letter, either report to or notify the company in writing or by phone, her employment may be terminated. This letter is signed by Sharron Bryant and was mailed to Plaintiff but returned unclaimed.

---

[1] Plaintiff had received several 5-day quit letters before this final letter dated April 19, 2005. (Docket no. 22, exhibits).

Even though the letter was not claimed, Plaintiff faxed a message to Ms. Bryant dated April 25, 2005.[2] (Docket no. 22-30). Plaintiff states in this message that she was at the doctor on April 25 and could not report until now "for the 5 day quit." Plaintiff further states in the message that she would come to Defendant's office the next day and asks Ms. Bryant to call her and advise her what to do. (*Id.*). Defendant's Labor Manager, Paul Azzarati, states in his affidavit that he left a voicemail message on Plaintiff's answering machine on April 26 after receiving this faxed message. He informed Plaintiff that she must report or provide documentation as to why she cannot report and that merely calling does not satisfy the requirements of the 5-day quit letter. (Docket no. 22-31). Mr. Azzarati further states that he told Plaintiff that she would be terminated on that day if she did not comply because that was the fifth day after the date of the letter.[3]

Defendant had also received a faxed form from Plaintiff on April 14, 2005 stating that she was disabled from working from April 12 until May 2, 2005. (Docket no. 22-31). However, based on recent independent medical examinations of Plaintiff,[4] Defendant rejected this form as insufficient justification for Plaintiff's absence. (*Id.*). Mr. Azzarti states in his affidavit that Plaintiff was informed that the faxed form was not accepted and that the new medical leave would not be processed. (*Id.*). Plaintiff testified

---

[2] Plaintiff testified during her deposition that she was in line at the post office to pick up this letter when she had a coughing fit and had to leave before receiving the letter. However, she said that had heard that she was to receive such a letter and assumed that this was the letter she was to receive. (Docket no. 22-3 at 20). Plaintiff further testified that she was familiar with the time limit in this letter for her to respond. (*Id.*).

[3] Plaintiff testified during her deposition that she received this phone message from Mr. Azzarati and that he told her that she had "two hours to get up there or [she is] fired." (Docket no. 22-3 at 21). Plaintiff said that she did not hear that message until later in the evening.

[4] Plaintiff had been found fit for work by medical examinations on August 11, 2004, September 14, 2004 (except for a 2-week period after Plaintiff's mother died), November 16, 2004, and on April 5, 2005. (Docket no. 22, exs. F, X, N, J). Defendant denied Plaintiff's April 14 request for medical leave based on the April 5 finding that she was fit for work. (Docket no. 22, ex. Z).

during her deposition that she did not receive any response from medical with respect to this form.[5] (Docket no. 22-3 at 19).

Defendant has also submitted the affidavit of Tom Gunderson who was formerly a Senior Labor Relations Associate for Defendant. (Docket no. 22-33). He states that he made the decision to terminate Plaintiff for failing to respond to the 5-day quit notice. Mr. Gunderson says that Mike Favor, Plaintiff's supervisor, had no role in the decision. (*Id*). Also, according to him neither Bill Baker nor Denise Andrews had a role in the decision to terminate Plaintiff. Mr. Gunderson states that on April 29, 2005 he told Plaintiff she was terminated. Plaintiff told him and Bruce Doom that she had received the April 19 letter and also received Mr. Azzariti's phone message of April 26. (*Id.*).

Defendant contends that Plaintiff's claims must be dismissed because she has no evidence that she was terminated as a pretext for age, sex, race or perceived disability discrimination. (Docket no. 22 at 7). For the purposes of this motion as to age, sex, and race discrimination, this Court therefore assumes that Plaintiff has established the requisite prima facie cases on her claims. The question then becomes whether Plaintiff has presented sufficient evidence that Defendant's proffered reason for her termination is pretextual. There is no dispute that many former employees of Defendant were terminated for failure to respond to 5-day quit letters. (Docket no. 22-35). Plaintiff argues that Defendant should not have issued the April 19, 2005 5-day quit letter because she had faxed on April 14 her psychiatrist's certification that she could not return to work. (Docket no. 24 at 4). She complains about how she was treated by her supervisor, Mike Favor, and by Denise Andrews and Bill Baker.[6] (*Id.*

---

[5] This dispute is not material to the granting of summary judgment in this action.

[6] In her response, Plaintiff alleged for the first time that in 1996 Favor came to the dock where she was working, locked the door, licked his lips, and asked her if she would do him a favor. (Docket no. 24 at 7). Plaintiff replied that she did not do favors. (*Id*.). This allegation does not preclude summary judgment because it is not supported by any affidavit, is contradicted by her deposition testimony, and is not related to her termination. (Docket no. 22-3).

at 7-12). However, Plaintiff has failed to present any evidence in the proper form showing that any of these persons played any role in her termination. The undisputed evidence is that Tom Gunderson was the sole decision maker and that none of these individuals played any role in that decision.

Moreover, although Plaintiff may believe that Defendant wrongly decided that she had abandoned her duties or that she had not adequately responded to the 5-day quit letter, there is no showing that this proffered reason for her termination was a pretext for age, race, or sex discrimination. *See Dews*, 231 F.3d at 1021.

The only remaining basis for discrimination that Plaintiff included in her Charge of Discrimination is discrimination based on disability or perception of disability. (Docket no. 22, ex. DD). Plaintiff has not clearly stated whether she is alleging discrimination based on a disability or based on a perceived disability. Under the ADA, employers are prohibited from discriminating against an employee with a "disability" which is defined as a "physical or mental impairment that substantially limits one of more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Individuals who do not suffer from a substantially limiting impairment are protected if their employer regards them as being disabled. 42 U.S.C. § 12102(2)(C). The two ways that an individual may fall into this definition are if the employer believes that a person has a physical impairment that substantially limits one or more major life activities or if the employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

If Plaintiff is proceeding based on a perceived disability, she has failed to present sufficient evidence that Defendant considered her to be disabled. The evidence is to the contrary–Defendant believed that Plaintiff was fit for work as shown by the medical evaluations documented in the record. (Docket no. 22, exs. F, X, N, J). If Plaintiff is proceeding based on an actual disability, she has failed

to present sufficient evidence of such a disability and its effect on her life activities. The medical report forms that Plaintiff submitted to Defendant show that she suffers from Depression and Anxiety. (Docket no. 22-5). However, these reports establish only that she intermittently suffers from these conditions to the extent that they affect her major life activity of working. In order to qualify as an impairment which substantially limits a major life activity under the ADA, the impairment's impact must be permanent or long-term. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002). The four medical evaluations cited above show that Plaintiff's Depression and Anxiety, and any other alleged impairment such as carpal tunnel syndrome, are not severe enough to qualify as a disability. *Mahon v. Crowell*, 295 F.3d 585, 590-91 (6th Cir. 2002) (impairment "that only moderately or intermittently" prevents individual from performing major life activity not a substantial limitation). Plaintiff has also failed to show that her termination was due to any disability or perceived disability.

Any other claims advanced by Plaintiff, such as failure to promote, were not included in Plaintiff's Charge of Discrimination and would not have been covered by a reasonable investigation of her claims.[7] Accordingly, Plaintiff may not advance those claims in this action. *See Jones v. Sumser Retirement Village*, 209 F.3d 851, 853-54(6th Cir. 2000); *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545-46 (6th Cir. 1991). Any remaining claims also fail to survive this motion because they are conclusory and lack factual support.

Defendant has shown that there are no genuine issues of material fact which would preclude summary judgment, and that it is entitled to judgment as a matter of law on all of Plaintiff's claims. Defendant's Motion for Summary Judgment should be granted and this action should be dismissed.

---

[7] In both her original and amended Charge of Discrimination, Plaintiff stated that both the earliest and latest date that the discrimination took place was April 29, 2005. This was the date of her termination. (Docket no. 22-32).

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 15, 2008                s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this report and Recommendation was served upon Theresa Palmer and Counsel of Record on this date.

Dated: January 15, 2008                s/ Lisa C. Bartlett
                                       Courtroom Deputy